UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:    Case No. 8:12-bk-06696-MGW
    Chapter 7
Janusz Checiek and
Jolanta Checiek,

       Debtors.
_____/

**MEMORANDUM OPINION ON
<u>DEBTORS' CLAIM OF "TOOL OF TRADE" EXEMPTION</u>**

Janusz Checiek—one of the Debtors—owns a 100% interest in a Florida corporation. That corporation, in turn, owns a 2006 Volvo truck. The Debtor claims the truck (which is worth $25,000) is exempt as a "tool of trade" under Bankruptcy Code § 522(d)(6). The Trustee concedes that the truck in this case is a "tool of trade." Nevertheless, the Trustee says the Debtors are not permitted to claim the truck as exempt because it is titled in the company's name. The Court must decide whether the Debtors can pierce the corporate veil to claim the truck as exempt.

Although no Florida court has specifically addressed this issue, the Court concludes that Florida law would permit "reverse veil piercing" only under extraordinary circumstances. And those circumstances are not present here. Specifically, there is no evidence in this case that the company was used for a fraudulent or improper purpose or that the Debtors have been injured because the corporate form was misused. And even if there was, "reverse veil piercing" still would not be appropriate here because it would significantly prejudice the Debtors' creditors. Accordingly, the Trustee is entitled to turnover of the 2006 Volvo truck and Janusz's interest in the company.

**Background**

The Debtors in this case are Janusz and Jolanta Checiek. Janusz is the sole shareholder of JJMC Transport, Inc. It appears that the company was originally incorporated in Illinois in 2004. When the Debtors moved to Florida in 2011, Janusz incorporated the company here. The company remains an active Florida corporation.

In 2007, before moving to Florida, Janusz purchased a 2006 Volvo truck for the business. The vehicle purchase agreement with River City Equipment Sales reflects the company as the purchaser. The company borrowed the money to buy the truck from General Electric Capital Corporation, and the loan and security agreement with GE Capital reflects the company as the purchaser and borrower. Although he signed the sale documents, Janusz is not listed as a co-purchaser or guarantor on any of them.

Nevertheless, when the Debtors filed for chapter 7 bankruptcy on April 30, 2012, they listed the 2006 truck on Schedule B. The Debtors also listed the 2006 truck (as well as Janusz's ownership in the company) on Schedule C. The Debtors claim the truck and Janusz's ownership interest in the company are exempt under Bankruptcy Code § 522(d)(6).[1]

The Trustee objects to the Debtors' "tool of trade" exemption because the truck is titled in the name of the company and now seeks turnover of the 2006 Volvo truck and Janusz's interest in the company.[2] There is, of course, no claim of exemption for shares

---

[1] Because the value of the truck exceeds the $2,175 "tool of trade" exemption, Janusz applies the remainder ($10,965.47) of his federal wildcard exemption under § 522(d)(5) to the truck.

[2] Doc. No. 19. There is some split of authority regarding when a car is a "tool of trade" under § 522(d)(6). For a discussion of that issue, see 4 *Collier on Bankruptcy* ¶ 522.09[6] (16th ed. 2010). The Trustee concedes in this case that the truck is a tool of trade since Janusz is a truck driver and uses the truck for his

of stock in a company that owns a "tool of trade" under § 522(d)(6). So the only way the Debtors can exempt (and retain) the truck is if they can "reverse veil pierce."

### Conclusions of Law[3]

Whether the Debtors are permitted to pierce the corporate veil is determined by Florida law since the company is incorporated in Florida and the activities relating to the Debtors' claim of exemption occurred here.[4] Under Florida law, courts are permitted to disregard the corporate form (and pierce the corporate veil) only in the most extraordinary cases.[5] Simply stated, veil piercing is an equitable remedy used to prevent the fraudulent or improper use of the corporate form from injuring the party seeking to pierce the corporate veil.

Most commonly, veil piercing is used by a creditor seeking to pursue a corporation's shareholder where (i) the corporate shareholder dominated and controlled the corporation to such an extent that the shareholder was, in fact, the alter ego of the corporation; (ii) the corporate form was used fraudulently or for an improper purpose; and (iii) the fraudulent or improper use of the corporation caused injury to the party seeking to pierce the corporate veil.[6] Veil piercing is less commonly used by corporate shareholders seeking to disregard the corporate form for their own benefit.

---

business. So the Court need not decide whether the 2006 Volvo truck is a "tool of trade" under § 522(d)(6) here.

[3] The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) & (E).

[4] *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994) (Paskay, J.).

[5] *Id.*

[6] *Id.* (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984)).

In Florida, cases that have allowed this sort of veil piercing involved lenders who insist on the use of a corporation to defeat the true borrower's rights under Florida's usury laws.[7] For instance, in *Gilbert v. Doris Corp.*, the court allowed individual shareholders to assert that a loan made to their corporation was usurious where the lender insisted that the shareholders incorporate an entity to receive the loan proceeds—even though the proceeds were for the individual shareholders' benefit—solely to avoid the lower usury rate for individual borrowers. The common thread in both of these types of veil piercing—whether conventional or reverse veil piercing—is that the corporate form is being used improperly by the party against whom the veil piercing remedy is being sought.

In this regard, Florida law is more restrictive than some other jurisdictions. For example, in some jurisdictions no improper conduct is required—just that the reverse veil piercing be justified by "strong policy reasons."[8] However, even those courts recognize that without some limitation, shareholders would be free to assert or disregard the corporate form whenever it suited their purpose. For that reason, the Minnesota Supreme Court in *Cargill*—one of the leading "reverse veil piercing" cases—recognized that "reverse veil piercing" should only be permitted in limited circumstances noting:

> One of the features of a corporation is limiting creditor
> liability to the corporate assets. We are aware of the danger
> of the damage of a debtor being able to raise or lower his
> corporate shield, depending on which position best protects

---

[7] *Holland v. Gross*, 89 So. 2d 255, 257 (Fla. 1956); *Sun Bank of Tampa Bay v. Spigrin Props., Ltd.*, 469 So. 2d 240, 243 (Fla. 2d DCA 1985); *Atlas Subsidiaries of Florida, Inc. v. O & O, Inc.*, 166 So. 2d 458, 461 (Fla. 1st DCA 1964); *Gilbert v. Doris R. Corp.*, 111 So. 2d 682, 683 (Fla. 3d DCA 1959).

[8] *Cargill v. Hedge*, 375 N.W.2d 477 (Minn. 1985).

> his property. Consequently, a reverse pierce should be permitted in only the most carefully limited circumstances.[9]

This Court agrees and concludes—based on its review of Florida law governing conventional and reverse veil piercing—that the Debtors cannot "reverse veil pierce" in this case absent evidence that the corporate form was used for a fraudulent or improper purpose.

And here, there is no record evidence in this case that the corporate form was used for a fraudulent or improper purpose. Unlike in *Gilbert*, where the court permitted veil piercing so that the shareholder could invoke the protections of usury laws that applied only to individuals, there is no evidence that River City Equipment Sales (the seller) or GE Capital (the lender) required Janusz to incorporate in connection with the sale of the truck to avoid usury laws. In fact, Janusz incorporated his company three years before he purchased the truck. Even if there was some evidence the corporate form was being misused, Janusz (who is seeking to veil pierce) was not the one harmed.

In fact, Janusz presumably benefited from buying and owning the vehicle in a separate corporate entity. For starters, the loan agreement is with GE Capital, and it appears that Janusz never personally guaranteed that debt. So GE Capital cannot pursue Janusz individually in the event of default because the truck was purchased by the company. Now, however, the Debtors seek to pierce the corporate veil to assert an exemption for corporate assets that does not exist under Florida law.

---

[9] *Id.* at 480.

Use of veil piercing in this manner would injure the Debtors' innocent creditors. The Debtors have scheduled over $100,000 in unsecured claims and only $51,030.07 in personal property.[10] The 2006 truck, which is worth $25,000, makes up half of the value of that personal property.[11] And the Debtors claim $13,140.47 of that value as exempt. That leaves less than $12,000 in equity available to unsecured creditors. Other than $4,100 of equity in a parcel of real property owned by the Debtors, the equity in the truck is the only asset available for unsecured creditors.[12] That means the unsecured creditors will receive $13,140.47 less in this case if the Debtors are permitted to "reverse veil pierce." So even if the corporate form was being misused, it is the creditors—not the Debtors—that are being harmed.

And in any event, this case is distinguishable from the cases permitting reverse veil piercing that the Debtors rely on.[13] For starters, none of those cases—which were decided under Minnesota law—require a fraudulent or improper use of the corporate form. Instead, they require the party seeking to pierce the corporate veil to show (i) the shareholder was the alter ego of the corporation; and (ii) that no creditors would be prejudiced by "reverse veil piercing." Here, there is no evidence that Janusz is the company's alter ego. To the contrary, all of the record evidence is that Janusz respected

---

[10] Doc. No. 1. The Debtors also own three parcels of real property that are worth $246,760 combined. There is a total of $16,001 in equity in those properties. But the Debtors have claimed all but $4,100 as exempt.

[11] The Debtors have scheduled the value of the 2006 truck at $25,000.

[12] The Debtors claim all of the remainder of their real and personal property as exempt.

[13] *Cargill*, 375 N.W.2d at 479; *Roepke v. W. Nat'l Mut. Ins. Co.*, 302 N.W.2d 350 (Minn. 1981); *In re Schwab*, 378 B.R. 854 (Bankr. D. Minn. 2007).

the corporate formalities. Janusz purchased the truck by entering into a loan agreement on behalf of the company. He titled the truck in the company's name. It also appears that he filed a Schedule K-1 to his personal income tax return reflecting income earned from the company. And, for the reasons discussed above, third parties would be prejudiced if the Debtors were permitted to reverse veil pierce.

## Conclusion

In this case, the Debtors seeks to pierce the veil of a corporation that Janusz set up for legitimate purpose (i.e., to own the truck that Janusz uses in his business). There was nothing improper about using the corporate form for that purpose. But allowing him to pierce the corporate veil now would be improper because it would harm the Debtors' creditors by allowing Janusz to claim an exemption that does not exist under Florida law. Accordingly, the Debtors cannot claim the 2006 Volvo truck or Janusz's interest in the company as exempt, and the Trustee is entitled to turnover of those assets.

**DATED** in Chambers at Tampa, Florida, on June 10, 2013.

Michael G. Williamson
United States Bankruptcy Judge

**David B. McEwen, Esq.**
**David B. McEwen, P.A.**
*Counsel for Trustee*

**Melanie A. Newby, Esq.**
**Jodat Law Group, P.A.**
*Counsel for Debtors*

Attorney David McEwen is directed to serve a copy of this memorandum opinion on interested parties and file a proof of service within 3 days of entry of the memorandum opinion.